******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

D'AURIA, J., with whom MULLINS, J., joins, dissenting. The judgments of the Appellate Court and the majority of this court take different routes, but both arrive at the virtually identical destination: the tortious interference claim brought by the plaintiff, David O'Sullivan, in the third count of his complaint is permitted to go forward. I agree with the outcome. It is a fair question to ask, then, why I would bother to dissent from the majority's holding. My reasons are twofold, and both, I believe, are important to the proper functioning of our appellate system beyond this case. The first involves the determination (almost always made in the Appellate Court in the first instance) of whether otherwise interlocutory appeals qualify as "final judgments," specifically, whether a prompt decision can be made that there is or is not a final judgment and, therefore, whether the appeal must be dismissed for lack of appellate jurisdiction or whether the appeal will advance to merits briefing, oral argument, and a considered opinion. In my view, the Appellate Court properly dismissed the appeal by the defendant, Alan F. Haught, for failing to raise a colorable claim of a final judgment for the same reason the majority rejects the defendant's collateral estoppel claim on the merits: the Probate Court decree was not final and binding. I am also concerned with the majority's invocation of this court's supervisory authority over the administration of justice to address the defendant's appeal on its merits because the plaintiff failed to properly present the issue for our determination, and neither party was given an opportunity to specifically brief that issue.

To recap, the trial court denied the defendant's motion for summary judgment on the third count of the plaintiff's complaint, concluding that the doctrines of res judicata and collateral estoppel did not apply because the plaintiff did not have an adequate opportunity to fully litigate his interference with an expected inheritance claim in the prior Probate Court proceeding. The defendant appealed from that ruling. The plaintiff moved to dismiss the defendant's appeal for lack of a final judgment, and the Appellate Court, without opinion,[1] granted the motion and dismissed the appeal.

Upon our grant of certification, a majority of this court today reverses the Appellate Court's judgment of dismissal because "a trial court's denial of a summary judgment motion based on a colorable claim of collateral estoppel is an immediately appealable final judgment."[2] Applying this standard, the majority holds that the defendant's appeal raises a "colorable claim" that "the issue of undue influence in the plaintiff's tortious interference with an expected inheritance claim was fully and fairly litigated in the will contest proceeding

before the Probate Court, and that there was an identity of the issues between the two proceedings," and, therefore, there was a final judgment for purposes of appeal.[3] See, e.g., *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 194–95, 544 A.2d 604 (1988); see also *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 346 n.7, 63 A.3d 940 (2013).

Instead of simply reversing the Appellate Court's judgment of dismissal and directing that, on remand, the appeal proceed to briefing and argument on the merits in that court, the majority invokes this court's supervisory authority and, in the name of "judicial economy," cuts to the chase, reaches the merits and disposes of the defendant's collateral estoppel defense. Specifically, the majority holds that, although the defendant's appeal raised a "colorable" claim that the Appellate Court had jurisdiction over his appeal, because, generally, we have held that rulings denying the application of res judicata or collateral estoppel are immediately appealable, the appeal ultimately lacks merit because, like the federal courts, we have held "that an appeal that is conducted as a trial de novo suspends the preclusive effect of the underlying judgment," and, therefore, a Probate Court decree "should not be accorded outcome determinative, preclusive effect in different litigation while that appeal is pending." *Barash* v. *Lembo*, 348 Conn. 264, 279, 284, 303 A.3d 577 (2023).

I appreciate the salutary efforts of the majority, having decided that the Appellate Court indeed had jurisdiction over the appeal, to resolve this appeal with a modicum of dispatch because, while the defendant has pursued this appeal, the plaintiff's case on the merits of his third count awaits trial. Nonetheless, my disagreement with the way the majority has resolved this certified appeal is twofold.

First, I would credit the Appellate Court with knowing full well that, in general, a trial court's denial of a summary judgment motion based on a colorable claim of collateral estoppel is an immediately appealable final judgment. See footnote 2 of this opinion; see also *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 328 n.3, 15 A.3d 601 (2011); *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, supra, 208 Conn. 194. I assume that the Appellate Court was drawing a different conclusion about the defendant's appeal, something other than the proposition from *Convalescent Center of Bloomfield, Inc.* Specifically, I would also credit the Appellate Court with knowing full well that black letter law requires that the preclusive effect of the doctrine of collateral estoppel applies only to final, valid judgments. See, e.g., *Independent Party of CT—State Central* v. *Merrill*, 330 Conn. 681, 714–15, 200 A.3d 1118 (2019). Although the majority in the present case relies heavily on our recent decision in *Barash* for its conclusion, the principle we applied

in that case (that, because the Probate Court ruling was subject to a de novo appeal, there was no finality of judgment) is not a concept so new or extraordinary that the Appellate Court could not have easily relied on it for its determination to dismiss the appeal. Therefore, for the same reasons that the majority holds that the defendant's appeal in this case fails on the merits, I would conclude that the defendant's appeal fails to raise a colorable claim of a final judgment. I am rather confident that is the reason the Appellate Court dismissed the defendant's appeal. If I am mistaken about that having been the court's basis for dismissing the appeal, I would nonetheless affirm the judgment of dismissal. See *Alves* v. *Giegler*, 348 Conn. 364, 394, 306 A.3d 455 (2024); *Connecticut Dermatology Group, P.C.* v. *Twin City Fire Ins. Co.*, 346 Conn. 33, 40–41, 288 A.3d 187 (2023).

Second, even if I agreed that the Appellate Court erroneously dismissed the defendant's appeal, I would resist the temptation to invoke our supervisory authority to resolve the merits of that appeal, as the majority does in the present case, even though the rationale for doing so appears obvious to us. " 'The exercise of our supervisory powers is an extraordinary remedy' "; *In re Ivory W.*, 342 Conn. 692, 734, 271 A.3d 633 (2022); that we invoke "only in the rare circumstance [in which] . . . traditional protections are inadequate to ensure the fair and just administration of the courts." (Internal quotation marks omitted.) *In re Aisjaha N.*, 343 Conn. 709, 724, 275 A.3d 1181 (2022). Several reasons convince me that this is not a case in which I would use our sparingly employed supervisory authority to reach an issue not otherwise before the court.

Primarily, upon our grant of certification, the plaintiff could have put the merits issue before us properly by filing a statement of alternative grounds for affirmance under Practice Book § 84-11 (b) and then have briefed the merits (i.e., the nonjurisdictional question). Moreover, because the plaintiff did not present the question as he should have, I am not as confident as the majority, which cites *Finan* v. *Finan*, 287 Conn. 491, 949 A.2d 468 (2008), and indicates that the defendant will not be prejudiced by the majority's resolution of the appeal "[b]ecause both parties have briefed the issue and it was addressed at oral argument before this court . . . ." (Internal quotation marks omitted.) Id., 498. In fact, the defendant's counsel mentioned several times at oral argument that, if we were inclined to reverse the Appellate Court's judgment of dismissal and reach the merits, he would be eager to submit a brief on the merits. Only under circumstances in which no party is prejudiced should we invoke our supervisory authority in such a way. See id. (court can exercise discretion to consider question outside scope of certified question only if both sides have had opportunity to brief issue); see also *Blumberg Associates Worldwide, Inc.* v.

*Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 162, 84 A.3d 840 (2014); *State* v. *Benjamin*, 299 Conn. 223, 232, 9 A.3d 338 (2010). Finally, even if I were not concerned about whether it is appropriate to exercise our supervisory authority to reach the merits in the present case, I am concerned about arguably similar cases in which we do not exercise our supervisory authority to reach alternative issues that we have not certified or that a party has not briefed. See, e.g., *Smith* v. *Supple*, 346 Conn. 928, 930, 293 A.3d 851 (2023) ("[b]ecause the defendants' appeal presents such a colorable claim, we transfer the appeal back to the Appellate Court for further proceedings according to law"); *Diaz* v. *Commissioner of Correction*, 335 Conn. 53, 60–61, 225 A.3d 953 (2020) (remanding case to Appellate Court so that it may decide, following briefing by parties, how best to proceed). Although it is not apparent whether we have an established standard for when we should be reaching and resolving issues instead of remanding the case to the Appellate Court for resolution, it is obvious to me that the Appellate Court is the best venue for the resolution of the merits of this appeal.

Accordingly, I respectfully dissent and would affirm the Appellate Court's judgment.

[1] The Appellate Court's order simply provided: "Granted." It is worth noting that the plaintiff based his motion to dismiss on a different ground (identity of issues) than both I and the majority address here (final and binding judgment). It is to me very doubtful that the Appellate Court dismissed the appeal on the identity of issues ground because, as the majority correctly concludes, it is clear that there was an identity of issues between the two proceedings. Rather, as I will discuss, my confidence is high that the Appellate Court dismissed the appeal for lack of a final judgment based on a correct application of our law that the Probate Court decree lacked sufficient finality to make it preclusive for purposes of collateral estoppel. Understanding fully that the Appellate Court, as the " 'workhorse' " of our appellate system; *Georges* v. *OB-GYN Services, P.C.*, 335 Conn. 669, 701, 240 A.3d 249 (2020) (*D'Auria, J.*, concurring in part and dissenting in part); disposes of hundreds upon hundreds of motions each year, while this court rules on only a fraction of that number, providing a brief explanation of the Appellate Court's rationale—even a sentence or two, or even simply a case citation—can go a long way toward dispelling any uncertainty about the basis for the Appellate Court's action, perhaps obviating the need for any appeal to or review by this court.

[2] Although we require a ground of appeal to be "colorable" for appellate jurisdiction to attach in other types of interlocutory appeals; see, e.g., *Smith* v. *Supple*, 346 Conn. 928, 929–30, 293 A.3d 851 (2023) (special motion to dismiss pursuant General Statutes § 52-196a); *Markatos* v. *Zoning Board of Appeals*, 346 Conn. 277, 283 and n.6, 288 A.3d 1024 (2023) (denial of motion to intervene); *Dorfman* v. *Smith*, 342 Conn. 582, 594, 271 A.3d 53 (2022) (immunity); *State* v. *Bornstein*, 196 Conn. App. 420, 426, 229 A.3d 1097 (2020) (double jeopardy); I am not aware of any cases applying this standard in the collateral estoppel context, but I accept the majority's determination to apply it in the present case.

[3] Although it is indeed well established law in this court, it is not well established in the federal courts that a ruling denying the application of res judicata or collateral estoppel is immediately appealable. See *Strazza Building & Construction, Inc.* v. *Harris*, 346 Conn. 205, 211 n.2, 288 A.3d 1017 (2023).